IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 98-10090

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAVIER OROZCO-RAMIREZ,

Defendant-Appellant.

---

Appeal from the United States District Court for the
Northern District of Texas

---

May 3, 2000

Before POLITZ, GARWOOD and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Javier Orozco-Ramirez (Orozco-Ramirez), currently confined in a federal correctional institute in El Reno, Oklahoma, filed this federal *habeas corpus* motion in the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 2255. The district court dismissed his motion as "second or successive" under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Orozco-Ramirez appeals. We affirm in part and reverse in part.

## Facts and Proceedings Below

On December 16, 1992, Orozco-Ramirez pleaded guilty to distribution of heroin and conspiracy to distribute heroin in the United States District Court for the Northern District of Texas. On April 14, 1993, he was sentenced to 180 months' imprisonment and a four-year term of supervised release. No notice of appeal was filed.

On January 30, 1995, Orozco-Ramirez filed a federal *habeas corpus* motion pursuant to section 2255 as to his 1993 conviction and sentence. In that motion, Orozco-Ramirez asserted only one ground for relief: that he received ineffective assistance of counsel in that his attorney did not file a notice of appeal despite having been asked to do so. Following an evidentiary hearing, the magistrate court recommended that Orozco-Ramirez be allowed an out-of-time appeal. The district court adopted this recommendation and on January 22, 1996, ordered an out-of-time appeal. Pursuant to that order, on January 24, 1996, Orozco-Ramirez filed his notice of appeal from the 1993 conviction and sentence. Represented by new counsel, Orozco-Ramirez raised on that direct appeal two issues relating to the quantity of drugs forming the basis of his 1993 sentence. This Court affirmed Orozco-Ramirez's sentence in an unpublished opinion. *United States v. Orozco-Ramirez*, No. 96-10120 (5th Cir. Oct. 25, 1996).

On November 3, 1997, Orozco-Ramirez, proceeding *pro se* and *in forma*

*pauperis*, filed the instant section 2255 motion[1] to vacate his 1993 conviction and sentence, asserting numerous errors including ineffective assistance of counsel at his sentencing, ineffective assistance of counsel rendering his guilty plea involuntary, and ineffective assistance of counsel in the course of his out-of-time direct appeal.[2] The magistrate court recommended that Orozco-Ramirez's motion be unfiled, because it was "second or successive" and was tendered without authorization from a court of appeals.  Adopting the findings and recommendation of the magistrate court, the district court ordered that

---

[1]  This Court issued its mandate affirming Orozco-Ramirez's conviction and sentence on November 20, 1996.  Therefore, his November 3, 1997 § 2255 motion was timely under AEDPA.  *See* 28 U.S.C. § 2255 ("A 1-year period of limitation shall apply to a motion under this section.").

[2]  In his motion, Orozco-Ramirez raised the following allegations: (1) ineffective assistance by trial counsel in failing to litigate a Fourth Amendment claim; (2) ineffective assistance of trial counsel in failing to advise him properly about the drug quantity and its sentencing implications, rendering his guilty plea involuntary; (3) ineffective assistance of trial counsel in not properly objecting to the quantity of drugs for sentencing purposes; (4) ineffective assistance of trial counsel in not objecting to the district court's alleged failure to make a specific finding as to Orozco-Ramirez's ability and intent to distribute additional quantities of heroin; (5) ineffective assistance of trial counsel in not objecting to consideration of Orozco-Ramirez's wife's testimony (apparently at another trial) as privileged; (6) ineffective assistance of trial counsel in not objecting to an adjustment for Orozco-Ramirez's role in the conspiracy; (7) ineffective assistance of trial counsel in not objecting to the district court's attributing to Orozco-Ramirez two criminal history points for a federal case where he was not represented by counsel; (8) ineffective assistance of trial counsel in not enforcing his right to allocution at sentencing; and (9) ineffective assistance of appellate counsel by not raising on the out-of-time appeal the sentencing court's failure to state its reasons for imposing a sentence in the middle of the guideline range found applicable.

3

Orozco-Ramirez's section 2255 motion not be filed. Orozco-Ramirez filed a timely notice of appeal, and this Court granted a certificate of appealability (COA) permitting Orozco-Ramirez's appeal.[3] We now affirm in part and reverse in part.

## Discussion

Enacted on April 24, 1996, AEDPA[4] made it significantly harder for prisoners filing second or successive federal *habeas corpus* motions to obtain hearings on the merits of their claims. *See Graham v. Johnson*, 168 F.3d 762, 772 (5th Cir. 1999), *petition for cert. filed*, 68 U.S.L.W. _____ (U.S. June 21, 1999) (No. 98-10002). As amended by AEDPA, section 2255 provides in relevant part as follows:

> "A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—

---

[3] The COA authorized appeal only as to whether "the district court erred in treating [Orozco-Ramirez's] § 2255 motion as successive under AEDPA."

[4] AEDPA contains two nearly identical provisions. Section 105(2) amends 28 U.S.C. § 2255, which governs collateral attacks of federal court convictions or sentences and is the provision at issue in this appeal. Section 101 amends 28 U.S.C. § 2244, which relates to attacks on state court convictions or sentences under 28 U.S.C. § 2254. "Because of the similarity of the actions under sections 2254 and 2255, they have traditionally been read *in pari materia* where the context does not indicate that would be improper." *United States v. Flores*, 135 F.3d 1000, 1002 n.7 (5th Cir. 1998), *cert. denied*, 119 S.Ct. 846 (1999). Therefore, although the application of "second or successive" in section 2255 is in question in the case *sub judice*, we will refer to cases involving section 2254 as relevant to our analysis. Similarly, we "do not adhere to the linguistic 'motion/petition' distinction in referring to the filing that a prisoner makes to begin proceedings under sections 2255 and 2254 (technically, a pleading filed under section 2255 is referred to as a 'motion,' while one filed under section 2254 is a 'petition')." *Id*.

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255.

As amended by AEDPA, section 2244 reads in pertinent part as follows:

"(b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

(B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three-judge panel of the court of appeals.

(C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.

(D) The court of appeals shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion.

(E) The grant or denial of an authorization by a court

5

of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari.
(4) A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section."
28 U.S.C. § 2244(b).

Orozco-Ramirez does not seek certification of his 1997 section 2255 motion by this Court. Rather, he asserts that his 1997 motion is not subject to AEDPA, and, even if it is, the motion is not "second or successive." We review *de novo* whether AEDPA applies to Orozco-Ramirez's current *habeas* motion and whether his motion is "second or successive" under AEDPA. *See Graham*, 168 F.3d at 772.

A. Impermissible Retroactivity of AEDPA

Orozco-Ramirez first contends that the district court erred in applying AEDPA's more stringent standards to his motion. Orozco-Ramirez argues that because his only prior *habeas* motion was filed before April 24, 1996 (AEDPA's enactment date) it would be impermissible to apply AEDPA's restrictions on "second or successive" applications to his present post-AEDPA motion. We disagree.

In *Graham*, we stated that Congress intended for AEDPA to govern applications filed after April 24, 1996. *See id*. at 782. Several circuits agree with our conclusion. *See Trice v. Ward*, 196 F.3d 1151, 1158 (10th Cir. 1999) ("We have repeatedly held that the 'AEDPA applies to cases filed after its effective date, regardless of when state court proceedings occurred.'") (quoting *Moore v. Gibson*, 195 F.3d 1152, 1162

6

(10th Cir. 1999)); *Taylor v. Lee*, 186 F.3d 557, 559-60 (4th Cir. 1999) ("[A]ny federal petition for a writ of habeas corpus filed after the signing of the AEDPA on April 24, 1996 is governed by the AEDPA."), *cert. denied*, 120 S.Ct. 1262 (2000); *Mancuso v. Herbert*, 166 F.3d 97, 101 (2d Cir.), *cert. denied*, 119 S.Ct. 2376 (1999) ("We conclude that the AEDPA applies to a habeas petition filed after the AEDPA's effective date, regardless of when the petitioner filed his or her initial habeas petition. . . . [T]his holding comports both with the statute's plain meaning and with congressional intent.") (footnote omitted); *Pratt v. United States,* 129 F.3d 54, 58 (1st Cir. 1997), *cert. denied*, 118 S.Ct. 1807 (1998) (applying AEDPA to Pratt's second section 2255 motion filed in 1997 after an initial *habeas* motion was filed in 1995).[5]  Orozco-

---

[5]This view, however, is not universal.  *See United States v. Roberson*, 194 F.3d 408, 412 (3d Cir. 1999) ("Congress did not provide unambiguous evidence of its intent to apply AEDPA's chapter 153 amendments to cases in which a prisoner filed his first § 2255 or § 2254 motion prior to AEDPA's effective date."); *United States v. Ortiz*, 136 F.3d 161, 165 (D.C. Cir. 1998) ("Congress did not expressly indicate whether the AEDPA amendments to the procedures and standards for filing second § 2255 motions are to be applied in cases where the first § 2255 motion was filed before the enactment of AEDPA."); *In re Hanserd*, 123 F.3d 922, 924 (6th Cir. 1997) (finding no clear congressional intent as to whether AEDPA's restrictions on multiple motions applied to Hanserd's second motion, when his first was filed pre-AEDPA). Nevertheless, even if we were to conclude that Congress's intent was not clear, we would still find that AEDPA is not impermissibly retroactive as applied to Orozco-Ramirez.  As in *Graham*, we conclude that Orozco-Ramirez could not show that he might have reasonably relied on pre-AEDPA law in filing his previous *habeas* motion. *See Graham*, 168 F.3d at 786. Orozco-Ramirez has not alleged detrimental reliance on pre-AEDPA law when he filed his initial motion in 1995, and he cannot reasonably contend that he would have acted differently had he known AEDPA later would bar his claims. Even under pre-AEDPA law, a prisoner was required to present all the claims he could assert in his first application. *See McClesky v. Zant*, 111 S.Ct. 1454, 1470-71 (1989) (holding that a prisoner seeking to bring

Ramirez filed his current 2255 motion on November 3, 1997. Therefore, AEDPA applies.

B.  "Second or Successive" under AEDPA

Orozco-Ramirez next contends that the district court erred in finding his present motion "second or successive" under AEDPA.[6] As the Supreme Court noted in *Lindh*, AEDPA is unclear in a number of important respects, including what "constitutes a 'second or successive' application."  *In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998) (*per curiam*); *see also Pratt*, 129 F.3d at 60 ("AEDPA does not define the

---

a new claim in a second or successive motion must show either that the motion was not an "abuse of the writ" or that he had made a "colorable showing of factual innocence").  Because Orozco-Ramirez defied pre-AEDPA law by not asserting discoverable claims in his first *habeas* motion, *see* section B, *infra*, a retroactive application of AEDPA rendering his present motion "second or successive" would not be impermissible.

[6] Orozco-Ramirez does not contend that merely reentering the 1993 judgment of conviction and sentence to permit his out-of-time direct appeal automatically resets the *habeas* motion counter to zero.  This argument is therefore abandoned. *See Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).  If this argument were before us, we would disagree.  Amending the date of the 1993 judgment of  conviction and sentence following the 1995 *habeas* motion did not in any way alter either the conviction or sentence.  The district court merely performed a wholly ministerial task permitting an out-of-time appeal, a standard practice among federal courts. *See, e.g.*, *In re Goddard*, 170 F.3d 435, 436 (4th Cir. 1999); *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993); *United States v. Pearce*, 992 F.2d 1021, 1023 (9th Cir. 1993); *Page v. United States*, 884 F.2d 300, 302 (7th Cir. 1989); *Slater v. United States*, 38 F. Supp.2d 587, 590 (M.D. Ten. 1999).  Therefore, the reentered judgment of conviction and sentence is not subject to challenge in a second habeas motion without regard to earlier motions relating to the original judgment of conviction and sentence. *See Pratt*, 129 F.3d at 62.

8

mantra 'second or successive.'").[7] Whether a *habeas* motion, filed after an initial *habeas* motion that alleged only ineffective assistance of counsel by failing to file notice of appeal as requested and resulted only in an out-of-time appeal, is "second or successive" under AEDPA presents a question of first impression in this Court. Those of our sister circuits that have considered the issue have not reached a uniform conclusion. *Compare In re Goddard*, 170 F.3d 435 (4th Cir. 1999), *Shepeck v. United States*, 150 F.3d 800 (7th Cir. 1998) (*per curiam*), *and United States v. Scott*, 124 F.3d 1328 (10th Cir. 1997) (*per curiam*) (all holding a second *habeas* motion, filed after an initial motion upon which an out-of-time appeal was granted, was not "second or successive" under AEDPA), *with Pratt v. United States*, 129 F.3d 54 (1st Cir. 1997) (ruling that AEDPA barred Pratt's second *habeas* motion as "second or successive" where it was filed after an initial motion which sought only an out-of-time appeal), *cert. denied*, 118 S.Ct. 1807 (1998).[8] We now weigh in on this issue.

As noted above, AEDPA does not define "second or successive." We have, however, held that "a prisoner's application is not second or

---

[7] *See Lindh*, 117 S.Ct. at 2068 ("All we can say is that in a world of silk purses and pigs' ears, the Act is not a silk purse of the art of statutory drafting.").

[8] *See also In re Goddard*, 170 F.3d 435, 438 (4th Cir. 1999) (Wilkins, J., dissenting) (arguing that a section 2255 motion seeking to obtain an out-of-time direct appeal counts as a first motion and renders a later motion raising claims that could have been alleged in the initial motion "second or successive").

successive simply because it follows an earlier federal petition." *In re Cain*, 137 F.3d at 235. Rather, a subsequent motion is "second or successive" when it: "1) raises a claim challenging the petitioner's conviction or sentence that was or could have been raised in an earlier petition; or 2) otherwise constitutes an abuse of the writ." *Id*. We find these standards consistent with the Supreme Court's views as expressed in *Stewart v. Martinez-Villareal*, 118 S.Ct. 1618 (1998), and *Slack v. McDaniel*, 120 S.Ct. ____, 2000 WL 478879 (US) (April 26, 2000).

In *Stewart*, the Court held that a motion is not "second or successive" under AEDPA merely because it is numerically a second (or subsequent) motion. *See id*. at 1621-22. Martinez-Villareal filed a federal *habeas* petition, raising several claims including a *Ford* claim.[9] *See id*. at 1620. The *Ford* claim was dismissed without prejudice as premature, because an execution date had not yet been set. *See id*. After his other grounds for *habeas* relief were adjudicated and denied, Martinez-Villareal later refiled the *Ford* claim. *See id*. The Court held the refiled motion was not "second or successive" under AEDPA, because "[t]o hold otherwise would mean the dismissal of a first habeas petition for technical procedural reasons would bar the prisoner from ever obtaining federal habeas review." *Id*. at 1622. The Court noted that AEDPA's "'restrictions on successive petitions constitute a

---

[9] *See Ford v. Wainwright*, 106 S.Ct. 2595, 2602 (1986) (holding that "the Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane").

10

modified *res judicata* rule, a restraint on what used to be called in habeas corpus practice "abuse of the writ."'" *Id.* (quoting *Felker v. Turpin*, 116 S.Ct. 2333, 2340 (1996)). *See also United States v. Barrett*, 178 F.3d 34, 44 (1st Cir. 1999), *cert. denied*, 120 S.Ct. 1208 (2000) ("The core of AEDPA restrictions on second or successive § 2255 petitions is related to the longstanding judicial and statutory restrictions embodied in the form of res judicata known as the 'abuse of the writ' doctrine."). Because Martinez-Villareal's *Ford* claim was not ripe for disposition until his most recent motion was filed, the Court ruled that the claim "would not be barred under any form of res judicata" and, therefore, was not "second or successive" under AEDPA. *Id.*[10]

In *Slack*, the petitioner, Slack, after his 1990 state conviction had been affirmed on direct appeal, filed his first federal habeas in 1991 raising various claims including some not previously presented to any state court. He filed a motion seeking to hold his federal petition in abeyance while he returned to state court to exhaust those claims. Thereafter, the district court dismissed the entire habeas petition "without prejudice" for failure to exhaust state remedies. After an unsuccessful round of state postconviction proceedings, Slack in May

---

[10] The Court recognized three situations in which a claim would not be "second or successive": (1) a motion asserting a claim that was previously dismissed because state remedies were not exhausted; (2) a motion filed after a court dismissed the motion for technical reasons such as failure to pay the required filing fee; and (3) a motion claiming incompetency to be executed was unripe because an execution date had not been set. *See id.*

11

1995 filed his second federal habeas, which included some claims Slack had not raised in his 1991 federal habeas. The state filed a motion to dismiss, in response to which the district court in March 1998 dismissed with prejudice as an abuse of the writ all claims not included in the 1991 petition, and dismissed (presumably, without prejudice) the remaining claims, which had been included in the 1991 petition, because state remedies had not been exhausted as to one of them. The Supreme Court ultimately held that the district court erred in dismissing as an abuse of the writ so much of Slack's second federal habeas as included claims not raised in his first federal habeas.[11] In so holding the Court relied on *Rose v. Lundy*, 102 S.Ct. 1198 (1982), observing that "*Rose v. Lundy* held that a federal district court *must* dismiss habeas corpus petitions containing both exhausted and unexhausted claims. The opinion, however, contemplated that the prisoner could return to federal court after the requisite exhaustion." *Slack* at *9 (emphasis added). *Slack* also relied on the statement in *Stewart* that "'[n]one of our cases . . . have ever suggested that a prisoner whose habeas petition was dismissed for failure to exhaust state remedies, and who then did exhaust those remedies and returned to federal court, was by such action filing a successive petition. A court where such a petition was filed

_____

[11]Although the Court applied pre-AEDPA law to resolve this issue because "Slack commenced this habeas proceeding in the district court in 1995, before AEDPA's effective date," it went on to state "we do not suggest the definition of second or successive would be different under AEDPA. *See Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998) (using pre-AEDPA law to interpret AEDPA's provision governing 'second or successive habeas applications')." *Slack* at *9.

12

could adjudicate these claims under the same standard as would govern those made in any other first petition.'" *Slack* at *9, quoting *Stewart* at 1622. The *Slack* Court then stated its holding as follows: "A petition filed after a mixed petition has been dismissed under *Rose v. Lundy before* the district court adjudicated *any* claims is to be treated as 'any other first petition' and is not a second or successive petition." *Id.* (emphasis added). *Slack* goes on to reiterate that "*Rose v. Lundy dictated* that, whatever particular claims the [first] petition contained, *none* could be considered by the federal court" and that "[no] *claim* made in Slack's 1991 petition *was adjudicated* during the three months it was pending in federal court." *Id.* at *10 (emphasis added).

Here, in contrast to *Stewart* and *Slack*, there is nothing about or related to any of the claims raised in Orozco-Ramirez's 1997 habeas, except his claim respecting ineffective assistance of counsel on his out-of-time appeal, which prevented Orozco-Ramirez from properly alleging those claims in his 1995 habeas along with his claim that counsel was ineffective for failing to give notice of appeal as requested; nor did the presence in the 1995 habeas of a claim that counsel was ineffective for failure to give notice of appeal in any way dictate or require that the 1995 habeas, had it also contained the claims later included in the 1997 habeas (other than that related to ineffective assistance of counsel during the out-of-time appeal), be dismissed without any merits determination merely because of the presence therein of the former claim or any one or more of the latter

13

claims. Further, in contract to *Slack*, the 1995 habeas was adjudicated on the merits as to the only claim alleged therein.

Orozco-Ramirez presents, in essence, two types of claims in his 1997 habeas: (1) ineffective assistance of trial counsel, and (2) ineffective assistance of counsel during the out-of-time appeal. We consider each claim independently in deciding whether it is "second or successive" under AEDPA. The facts underlying Orozco-Ramirez's claims relating to his counsel's performance at trial occurred before he filed his initial *habeas* motion in 1995; he could have alleged those claims in that 1995 motion, but failed to do so. Orozco-Ramirez does not argue to the contrary; instead, he contends only that his initial 1995 motion does not render the present 1997 motion "second or successive." Therefore, we conclude that Orozco-Ramirez's claims of ineffective assistance of counsel at trial were available to him and could have been asserted by him in his initial *habeas* motion. *See In re Cain*, 137 F.3d at 235. Accordingly, they are "second or successive" under AEDPA, and the district court properly dismissed them.

We next turn to Orozco-Ramirez's claim of ineffective assistance of counsel during the out-of-time appeal. The facts underlying this claim did not occur until after Orozco-Ramirez filed his initial *habeas* motion and the district court granted the relief requested in the motion. Therefore, his claim relating to his counsel's performance during his out-of-time appeal accrued after his initial habeas motion was adjudicated and could not have been raised in that motion. *See id.;*

14

*see also Shepeck*, 150 F.3d at 801 ("[I]f Shepeck's appellate lawyer furnished ineffective assistance of counsel, that constitutional violation occurred *after* the grant of his first petition under § 2255" which sought only to permit an out-of-time appeal.); *Scott*, 124 F.3d at 1330 ("Mr. Scott's ineffective assistance of appellate counsel claim did not even exist until the direct appeal process concluded."). We conclude then that this claim is not "second or successive" under AEDPA, because "[t]o hold otherwise . . . would bar the prisoner from ever obtaining federal habeas review" on this ground. *Stewart*, 118 S.Ct. at 1622. Accordingly, we reverse the district court's dismissal of Orozco-Ramirez's claim of ineffective assistance of counsel during the out-of-time appeal and remand that claim for consideration on its merits.

As Orozco-Ramirez points out, and the government concedes, the Fourth Circuit's decision in *In re Goddard*, 170 F.3d 435 (4th Cir. 1999) is almost directly on point with this case.[12] The Fourth Circuit would

---

[12] Goddard pleaded guilty to federal drug offenses, and no appeal was initially taken. *See id.* at 436. More than two years later, on March 18, 1996 (pre-AEDPA), Goddard filed a *pro se* section 2255 motion alleging that, against his request, his attorney failed to appeal. *See id.* No other claim was asserted in the motion. *See id.* The district court granted Goddard's motion and reentered judgment with the same sentence as before. *See id.* Goddard timely appealed, and the Fourth Circuit affirmed his conviction and sentence. *See id.* Then, on March 16, 1998 (post-AEDPA), Goddard filed another section 2255 motion, alleging ineffective assistance of counsel during his sentencing, which took place prior to the filing of his initial 2255 motion. *See id.* The district court dismissed this motion as "second or successive" and tendered without a court of appeals's authorization, as set forth in AEDPA. *See id.* Goddard appealed the dismissal, and the Fourth Circuit reversed.

hold that none of Orozco-Ramirez's claims are barred by AEDPA's restrictions on "second or successive" motions. *See id*. ("Because Goddard used his first § 2255 motion solely to reinstate his right to direct appeal, that motion does not count against him."). We respectfully disagree with that holding.

In reaching its conclusion that Goddard's later motion was not "second or successive" under AEDPA, the Fourth Circuit reasoned that "[t]he only purpose of the reentered judgment, prompted by the first § 2255 motion, was to put [Goddard] back in the position he would have been in had his lawyer filed a timely notice of appeal." *Id*. at 437. To deny him another 2255 motion would deprive him of "one *full and fair opportunity* to wage a collateral attack" on his conviction and sentence. *Id*.

Instead of applying *res judicata* principles as dictated by the Supreme Court in *Stewart*, the Fourth Circuit in *Goddard* focused on what it perceived to be the unfairness in requiring a prisoner in Goddard's (and Orozco-Ramirez's) position to present all claims that could be asserted in an initial habeas motion, including a claim that he has been deprived of a direct appeal by ineffective assistance of counsel. The First Circuit and Judge Wilkins's dissent in *Goddard* contest the notion that a prisoner suffers unfairness from a requirement that he present all collateral claims in an initial 2255 motion. *See In re Goddard*, 170 F.3d 435, 441 (4th Cir. 1999) (Wilkins, J., dissenting) ("[A] § 2255 movant suffers no unfairness from a requirement that he pursue all of

16

his collateral issues in his first § 2255 motion, including a claim that he has been deprived of a direct appeal by ineffective assistance of counsel."); *Pratt*, 129 F.3d at 61 ("We discern no unfairness in holding Pratt to this regimen."). As both opinions explain, a prisoner in Orozco-Ramirez's position is always properly motivated to present all his collateral attacks in his initial motion, because when filing the motion he cannot know whether or not his claim seeking an out-of-time appeal will be successful. *See id*. If such a claim is not successful, then a subsequent motion would be "second or successive"; and all grounds for *habeas* relief that could have been asserted in the initial motion would be dismissed in the subsequent motion.[13] Under the majority's view in *In re Goddard*, whether a subsequent motion would be "second or successive" would depend upon the success of the motion to permit an out-of-time appeal. We find the First Circuit's approach in *Pratt* follows our precedent as set forth in *In re Cain* and the standards set forth by the Supreme Court in *Felker* and *Stewart*.

> "The requirement that all *available claims* be presented in a prisoner's first habeas petition is consistent not only with the spirit of AEDPA's restrictions on second and successive habeas petitions, but also with the preexisting abuse of the writ principle. The requirement serves the singularly salutary purpose of forcing federal habeas petitioners to think through all potential post-conviction

---

[13] This would not necessarily be the end of the day for the prisoner. Rather, in order to obtain consideration on the merits, the prisoner would be required to obtain certification by the appropriate court of appeals that the motion involves either newly discovered evidence that is potentially clearly dispositive of his innocence or a new rule of constitutional law that the Supreme Court had made retroactive to cases on collateral review. *See* 28 U.S.C. § 2255.

claims and to consolidate them for a unitary presentation to the district court." *Id.* (emphasis added). *Pratt*, 129 F.3d at 61.[14]

Applying *res judicata* principles to this appeal, we hold that Orozco-Ramirez's claims regarding his trial counsel were available to him when he filed his initial *habeas* motion and are, therefore, "second or successive" under AEDPA.[15]  His claim of ineffective assistance of counsel during the out-of-time appeal, however, could not have been raised in the prior proceeding and, thus, is not "second or successive."

## Conclusion

We reverse the dismissal of Orozco-Ramirez's claim for collateral relief based on alleged ineffective assistance of counsel during the out-of-time appeal and remand that claim for consideration on its merits.  We affirm the dismissal of all other claims raised by Orozco-

---

[14]  In his second 2255 motion, Pratt sought to set aside his conviction on the basis of ineffective assistance of counsel during his trial. *See id*. at 56.  Unlike Orozco-Ramirez, Pratt did not allege that his appellate counsel was constitutionally deficient during his out-of-time appeal.  The First Circuit, therefore, affirmed the district court's dismissal of all of Pratt's claims.

[15]  Had Orozco-Ramirez included these claims in his initial *habeas* motion, the district court, had it determined to rule on one or more of them and found merit therein, could have granted Orozco-Ramirez a new trial, pretermitting his claim based on counsel's failure to file a notice of appeal, or the district court could have held them in abeyance or dismissed them without prejudice, pending the outcome of his reinstated direct appeal. *See Brewer v. Johnson*, 139 F.3d 491, 493 (5th Cir. 1998); *Mack v. Smith*, 659 F.2d 23, 26 (5th Cir. Unit A 1981).  In the latter event, after his direct appeal, Orozco-Ramirez then could have presented the previously raised, but unadjudicated, claims, along with his claim of ineffective assistance of counsel during the out-of-time appeal, to the district court for consideration on the merits.

Ramirez.  AFFIRMED in part; REVERSED and REMANDED in part.